NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-2340/13-2341/13-2584
_____

IN RE: DIET DRUGS (PHENTERMINE/FENFLURAMINE/DEXFENLURAMINE)
PRODUCTS LIABILITY LITIGATION

Jeanette Pearson,
Appellant No. 13-2340
Christeen Rightnar,
Appellant No. 13-2341
Janice Phillips,
Appellant No. 13-2584

_____

On Appeal from United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-99-cv-20593, 2-16-md-01203 and 2-11-md-01203)

District Judge: Harvey Bartle, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 9, 2014

Before:  FISHER, COWEN and TASHIMA,[*] *Circuit Judges*.

(Filed: July 15, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

_____

[*]The Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit
Court of Appeals, sitting by designation.

Jeanette Pearson ("Pearson"), Christeen Rightnar ("Rightnar"), and Janice Phillips ("Phillips") (collectively, "Appellants") appeal an Order[1] of the United States District Court for the Eastern District of Pennsylvania denying their recovery under the terms of the Diet Drug Nationwide Class Action Settlement Agreement (the "Settlement Agreement"). We will affirm.

## I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

This case is part of an ongoing multi-district litigation concerning a diet drug, called "Pondimin," which was previously sold by Wyeth.[2] Pursuant to the Settlement Agreement, Wyeth was required to contribute funds for the payment of claims brought by individuals negatively affected by their diet drugs. The AHP Settlement Trust (the "Trust") was responsible for administering and reviewing a claimant's submissions to determine eligibility for benefits under the Settlement Agreement.

In order to qualify for compensation under the Settlement Agreement, a claimant must submit a completed Green Form to the Trust, which requires: (1) information from

---

[1] The District Court denied Pearson's claims on March 26, 2013, Rightnar's claims on April 4, 2013, and Phillips' claims on May 10, 2013. Their claims on appeal were briefed together and will be resolved together, but will be referred to individually as necessary.

[2] Prior to March 11, 2002, Wyeth was known as American Home Products Corporation.

the claimant's representative; (2) information regarding the claimant's medical condition, to be completed by the claimant's attesting physician; and (3) information from the claimant's attorney where applicable. Appellants, who were each prescribed the diet drug and ingested it over the course of several months, individually sought compensation benefits under the Settlement Agreement.

In their Green Form submissions, Appellants' physicians confirmed that each Appellant underwent an echocardiogram. Pearson's physician noted that her echocardiogram showed moderate mitral regurgitation and an abnormal left atrial dimension. Both Rightnar's and Phillips's physicians noted that their echocardiograms demonstrated moderate mitral regurgitation and an ejection fraction of 50-60%.

The Trust referred Pearson's Green Form submission to its auditing cardiologist, who concluded that there was no reasonable medical basis for her attesting physician's conclusions. Pearson sent additional information (i.e., affidavits from two other cardiologists) in hopes of a different response, but she received the same response. The auditing cardiologist who reviewed Rightnar's Green Form submission at first concluded that her attesting physician's conclusions had a reasonable medical basis. However, her claim fell into a category that required re-auditing[3] of claims and was later denied due to

---

[3] The District Court noted that Pretrial Order ("PTO") No. 5632 (Aug. 26, 2005) authorized the Trust to re-audit the claims of certain Diet Drug Recipients, including Rightnar, who opted out of the Seventh Amendment to the Settlement Agreement but did not elect to submit the initial audit of their claims to the Claims Integrity Process, based upon the Trust's allegations that the initial audits were not reliable.

lack of a reasonable medical basis for her attesting physician's notations. Rightnar's attempts to submit additional affidavits from three other cardiologists likewise failed. Phillips' auditing cardiologist also concluded that there was no reasonable medical basis for her attesting physician's conclusions regarding her ejection fraction, but he did find a reasonable medical basis for his answer of moderate mitral regurgitation. Her claim was denied based upon the auditing cardiologist's finding regarding her ejection fraction and her additional attempts to submit affidavits were rejected.

Following their respective denials, Appellants filed notices of dispute regarding the Trust's audit determinations. The Trust then applied for an Order from the District Court requiring Appellants to Show Cause as to why their claims should be eligible under the Settlement Agreement. The District Court issued that Order and referred each claim to the Special Master for further proceedings.

The Special Master assigned a Technical Advisor[4] to review all documents submitted by the Trust and the claimants and to prepare a report for the District Court. In those reports, the Technical Advisor concluded that there was no reasonable medical basis for Pearson's attesting physician's representation that she had moderate mitral regurgitation, and that there was no reasonable medical basis for both Rightnar's and Phillips' attesting physicians' representations that they had a reduced ejection fraction.

---

[4] Under the Audit Policies and Procedures set forth in PTO 2457, *see* App. at A1772, "the Special Master may assign a Technical Advisor to review the Special Master Record and prepare a report to the Court setting forth his/her opinions regarding the issue(s) in dispute in the audit," *see* App. at A1787.

After reviewing the entire Show Cause record for each Appellant, which included the Technical Advisor's reports, the District Court issued detailed Memorandum Opinions concluding that Appellants failed to meet their burden of proving that there was a reasonable medical basis for their attesting physicians' findings. Three separate Orders were then entered affirming the Trust's denials of their claims for benefits under the Settlement Agreement.

These appeals followed.

## II.

The District Court had jurisdiction over all terms of the Settlement Agreement under 28 U.S.C. §§ 1332 and 1407. We exercise jurisdiction over a final order of the District Court under 28 U.S.C. § 1291.

"We review a [d]istrict [c]ourt's exercise of its equitable authority to administer and implement a class action settlement for abuse of discretion." *In re Diet Drugs*, 543 F.3d 179, 184 n.10 (3d Cir. 2008) (citing *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000)). "[T]o find an abuse of discretion [a] [d]istrict [c]ourt's decision must rest on 'a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *Id.* (quoting *In re Nutraquest, Inc.*, 434 F.3d 639, 645 (3d Cir. 2006)).

III.

Appellants set forth two arguments on appeal: (1) that the District Court abused its discretion in concluding that there was no reasonable medical basis for their attesting physicians' Green Form findings; and (2) that the District Court abused its discretion by allowing the Technical Advisor to submit new evidence and resolve a disputed issue of fact. We disagree with both of these contentions.

1.

"Once the Trust denies a claim and the claim advances to a show cause proceeding, the claimant has the burden of proving there was a reasonable medical basis for the attesting physician's representations." *Id.* at 189; *see also* App. at A1785. The District Court in the instant proceedings both acknowledged and applied this standard in each of its Orders. The record makes clear that the District Court assessed all of the medical opinions presented before it and that its denial was based wholly on Appellants' failure to rebut certain assessments that supported the opinions of those opposing their claims, i.e., both the auditing cardiologists *and* the Technical Advisor. *See, e.g.,* App. at A13, A27, A41 ("Mere disagreement with the auditing cardiologist and Technical Advisor without identifying any specific errors by them is insufficient to meet a claimant's burden of proof."). Without such a showing by Appellants, they cannot demonstrate that the *only* conclusion that may be drawn from their echocardiograms is that of their attesting physicians. The record, therefore, leaves open the question of

6

whether there is a reasonable medical basis for Appellants' attesting physicians' Green Form responses. For that reason, we cannot conclude that the District Court abused its discretion in concluding that Appellants failed to meet their burden of proving that there was a reasonable medical basis for their attesting physicians' Green Form findings.

2.

We also find no merit in Appellants' contention that the District Court abused its discretion by allowing the Technical Advisor to submit new evidence and resolve a disputed issue of fact.

"[T]rial judges in the federal system possess[] 'inherent power to provide themselves with appropriate instruments required for the performance of their duties,' including the power to 'appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause.'" *Reilly v. United States*, 863 F.2d 149, 157 (1st Cir. 1988) (quoting *In re Peterson*, 253 U.S. 300, 312 (1920)). These advisors are not witnesses and, therefore, may not contribute to evidence in a given case. *See id.* Nor are they judges, "so they may not be allowed to usurp the judicial function." *Id.* (citing *Kimberly v. Arms*, 129 U.S. 512, 524 (1889) (noting that a court may not "abdicate its duty to determine by its own judgment the controversy presented" through appointment of advisors). "[T]he advisor's role is to [merely] act as a sounding board for the judge – helping the jurist to educate himself in

7

the jargon and theory disclosed by the testimony and to think through the critical technical problems." *Id.* at 158.

After reviewing the District Court's Memorandum Opinion and the Show Cause record, we are confident that the District Court carefully considered the entire record and reached its conclusion largely independent of the Technical Advisor.  As noted above, the District Court's decision was premised upon Appellants' failure to refute assessments of both the auditing cardiologists *and* the Technical Advisor.[5]  We find no impropriety in the District Court's reliance on the Technical Advisor's report.

IV.

For the reasons stated above, we will affirm the District Court's denial of Appellants' claims under the Settlement Agreement.

---

[5] Appellants also contend that the District Court "merely rubber stamped" the Technical Advisor's finding that there was no reasonable medical basis for their diagnoses.  They point to the fact that the District Court has previously adopted the Technical Advisor's findings concerning claims arising under the Settlement Agreement a total of 192 times out of a possible 193.  We find this argument unavailing to their cause, as that point does little to assist in our review of the instant appeals.  In spite of that, we find no evidence in *this* record which demonstrates a mere "rubber stamping" of the Technical Advisor's opinion.